**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| HonorHealth,<br><br>    Plaintiff,<br><br>v.<br><br>National Labor Relations Board, et al.,<br><br>    Defendants. | No. CV-24-03009-PHX-DJH<br><br>**ORDER** |

  Petitioner HonorHealth ("Petitioner") seeks to temporarily enjoin parallel administrative proceedings scheduled to begin on November 19, 2024, before the National Labor Relations Board ("NLRB"). (Doc. 2 at 1). Respondent NLRB ("the NLRB") has filed an expedited response (Doc. 9), and Petitioner, an expedited Reply (Doc. 11). After considering the parties' briefing and evidence, the Court finds that Petitioner has not demonstrated entitlement to injunctive relief.

**I. Background**

  This matter arises from various unfair-labor-practice ("ULP") charges filed against Petitioner by a former employee: Ms. Brittany Poole ("Ms. Poole"). (Doc. 2 at 5; Doc. 9 at 1). These ULPs include charges filed on February 14, 2022, May 19, 2022, and November 16, 2022. (Doc. 1 at ¶¶ 45–49). Based on Ms. Poole's ULP charges, the NLRB filed a Consolidated Complaint against Petitioner on February 26, 2024, and an administrative hearing was scheduled for October 29, 2024. (Doc. 1-1 at 3–4, 10). Petitioner represents that it heard "nothing" from the NLRB until October 15, 2024, when

it decided to contact the NLRB. (Doc. 2 at 2). It further represents that the NLRB indicated it intended to move forward with the hearing but that it agreed to an extension of the hearing until November 19, 2024. (*Id.*)

In its Consolidated Complaint, the NLRB alleges that Petitioner violated Sections 8(a)(1) and (4) of the National Labor Relations Act ("NLRA"). (Doc. 1-1 at ¶ 6–7). It also alleges that Ms. Poole "engaged in concerted activities with other employees for the purposes of mutual aid and protection" and that she complained to Petitioner regarding the wages, hours, and working conditions of its employees. (*Id.* at ¶ 4(a)). It further alleges that Petitioner interrogated employees about their protected concerted activities and threatened employees with unspecified reprisals. (*Id.* at ¶ 4(b)). The NLRB states in its Consolidated Complaint that, on or about January 27, 2022, Petitioner issued Ms. Poole a "corrective action" and threatened employees with further corrective action, up to and including termination of employment, for engaging in protected concerted activities. (*Id.* at ¶ 4(c)). Petitioner admitted in its Answer that it terminated Ms. Poole on November 2, 2022, but says it was for "legitimate business reasons" and denies that her termination violated the NLRA. (*Id.* at 18). Due to the above alleged conduct, Respondent seeks an order from the Board:

> providing for all relief as may be just and proper to remedy the unfair labor practices alleged, including, but not limited to, requirements that[Petitioner]: (a) physically post and electronically distribute the Notice to Employees, including by internet, intranet, email, text message, posting on social media websites, and posting on internal apps; and (b) make [Ms.] Poole whole, including, but not limited to, by ***payment for any consequential economic harm*** she suffered as a result of her unlawful discharge . . . [as well as] all other relief as may be just and proper to remedy the unfair labor practices alleged.

(Doc. 1-1 at ¶ 8 (emphasis added)). Petitioner answered the Consolidated Complaint and asserted, among other things, affirmative defenses challenging the constitutionality of the scheduled hearing and the NLRB's structure. (*Id.* at 17–19).

On October 31, 2024, Petitioner filed the instant federal court action and seeks an emergency temporary restraining order ("TRO") staying the November 19, 2023, hearing

until these constitutional issues can be "fully litigated," presumably, by this Court. (Doc. 2 at 17).

## II.     Legal Standard

Injunctive relief is an "extraordinary remedy only granted upon a clear showing that a [petitioner] is entitled to such relief." *Nat'l Ass'n for Gun Rts., Inc. v. Motl*, 188 F. Supp. 3d 1020, 1028 (D. Mont. 2016) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). The standards governing temporary restraining orders and preliminary injunctions are "substantially identical." *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (citation omitted). To obtain a preliminary injunction, a plaintiff must show: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm if injunctive relief were denied, (3) that the equities weigh in the Plaintiff's favor, and (4) that the public interest favors injunctive relief. *Winter*, 555 U.S. at 20. The movant carries the burden of proof on each element of the test. *See Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980). The last two factors merge when, as here, the government is a party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

The Ninth Circuit employs a "sliding scale" approach to preliminary injunctions, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "The moving party may meet [its] burden by showing either: (1) a combination of probable success on the merits and a possibility of irreparable injury, or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor." *Nouveau Riche Corp. v. Tree*, 2008 WL 55381513, at *4 (D. Ariz. Dec. 23, 2008) (citing *Earth Island Inst. v. U.S. Forest Serv.*, 351 F.3d 1291, 1298 (9th Cir. 2003)). "[C]ourts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief,'" and should be particularly mindful, in exercising their sound discretion, of the "public consequences in employing the extraordinary remedy of injunction." *Id.* at

24 (citations omitted). Injunctive relief is an equitable remedy, and "[t]he essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1022 (9th Cir. 2009) (citing *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987)).

**III.  Discussion**

Petitioner argues that it can show a likelihood of success on the merits that (1) the hearing will violate its Seventh Amendment Right to a jury trial; (2) the NLRB's Administrative Law Judges ("ALJs") are unconstitutionally insulated from removal; and (3) the NLRB's Board Members are unconstitutionally insulated from removal. (Doc. 2 at 7, 9, 11). It also argues that it will suffer irreparable harm without an injunction because of the unconstitutionality of the NLRB proceedings, and that the balance of harms and public interest factors weigh in favor an injunction. (*Id*. at 14–15). It specifically argues that forcing it to participate in an administrative proceeding where the NLRB seeks unconstitutional relief clearly demonstrates irreparable harm in addition to the fact that the time and cost of participating in such a proceeding cannot be undone and is "impossible to remedy once the [administrative hearing is] over, which is when appellate review kicks in." (Doc. 11 at 5 (citing *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 191 (2023)). Finally, it preemptively argues that severability does not prevent its entitlement to an injunction here. (*Id*. at 15).

The NLRB argues in opposition that Petitioner is not likely to succeed on any of its claims because: (1) its removal claims are contrary to precedent, specifically, *Humphrey's Executor v. United States*, 295 U.S. 602 (1935); and (2) the Court lacks subject-matter jurisdiction over its Seventh Amendment claim as Petitioner can obtain meaningful review through the NLRB's review processes. (Doc. 9 at 3, 10). The NLRB also argues that Petitioner has not met its burden to show irreparable harm and that the public interest and the balance of the equities disfavor an injunction. (*Id*. at 13, 16). As Petitioner anticipated, The NLRB also argues that if the Court were to find removal protections for ALJs and

Board members to be unconstitutional, "the proper remedy would be severance, not an injunction." (Doc. 9 at 5 (citing *Space Expl. Techs. Corp. v. Bell*, 701 F. Supp. 3d 626, 635 (S.D. Tex. 2023) (withholding preliminary relief on removability grounds for this reason)).

The Court finds that even if Petitioner could show a likelihood of success on the merits of its constitutional claims, it has failed to show that a failure to grant injunctive relief will cause it irreparable harm.

### A. Irreparable Harm

Under the second *Winter* factor, "[a] plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Forefront Dermatology S.C. v. Crossman*, 642 F. Supp. 3d 947, 951 (D. Ariz. 2022) (quoting *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)). "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Id.* Irreparable harm is harm "that cannot be redressed by a legal or equitable remedy following trial." *Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, 475 F. Supp. 2d 995, 1007 (C.D. Cal. 2007) (internal quotation marks omitted). The party seeking a preliminary injunction must establish that "irreparable harm is likely, not just possible." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

They also must demonstrate "the ***immediacy*** of any alleged harm" for injunctive relief to be proper. *Brandr Grp., LLC v. Elec. Arts Inc.,* 2023 WL 4297571, at *2 (N.D. Cal. June 30, 2023) (citing *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("[A] plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief.")) (emphasis added). "A long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Wahoo Int'l, Inc. v. Phix Dr., Inc.*, 2014 WL 2106482, at *3 (S.D. Cal. May 20, 2014) (quoting *Garcia v. Google, Inc*., 743 F.3d 1258, (9th Cir. 2014)).

Petitioner argues that having to proceed in an improperly insulated, insufficiently accountable, tribunal without a jury constitutes irreparable harm. (Doc. 2 at 14). Not so.

These arguments "fail to meet the standard that the Supreme Court has established and the Ninth Circuit has reiterated: [t]he key . . . is demonstrating that the unconstitutional provision actually caused[, or will cause,] the plaintiff harm.' " *Ares Collective Grp. LLC v. Nat'l Lab. Rels. Bd.*, 2024 WL 4581436, at *2 (D. Ariz. Oct. 25, 2024) (quoting *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021)); *see also Collins v. Yellen*, 594 U.S. 220, 260 (2021) (stating that shareholders needed to show the unconstitutional removal restriction—not simply the agency's actions—"cause[d] harm" to be entitled to retrospective relief); *YAPP USA Auto. Sys., Inc. v. NLRB*, 2024 WL 4489598, *2–3 (6th Cir. 2024) (holding that the plaintiff was not entitled to an injunction where it failed to show the removal protections for NLRB officials would cause harm).

Recently, another court within this district denied the petitioner's request for a TRO in a substantially similar case: *Ares Collective*, 2024 WL 4581436, at *2.[1] There, like here, petitioners were companies accused of violating Sections 8(a)(1) and (4) of the NLRA. *Id.* at *1. The *Ares Collective* petitioners sought to enjoin the NLRB from "subjecting them to unconstitutionally structured administrative proceedings." *Id.* They also raised the same exact arguments in *Ares Collective* that Petitioner raises here, that: "(1) the scheduled proceeding before an NLRB ALJ will violate their Seventh Amendment right to a jury trial, and (2) the NLRB ALJs and Board Members are unconstitutionally insulated from removal by the President by two layers of 'for cause' employment protection." *Id.* at *2 (internal citations to the record omitted). The district court found, however, that "even assuming the alleged constitutional infirmities exist, [petitioners] fail to show how this Court's failure to grant temporary relief will cause irreparable harm." *Id.* The court first reasoned that "nothing about the NLRB proceedings will permanently deprive [the petitioners] of their Seventh Amendment right" since "[they] c[ould] seek review of the NLRB's decision in the court of appeals." *Id.* The court also rejected that the improper insulation of ALJs and board members would cause irreparable harm to petitioner. In doing

---

[1] The Court notes that the *Ares Collective* petitioners were represented by the same law firm that represents Petitioner here: Ogletree Deakins Nash Smoak & Stewart PC. (*Compare* Doc. 1 at 1 *with Ares Collective*, 2024 WL 4581436, at *1).

- 6 -

so, it reasoned that "merely highlighting the fact there is a two-layer removal system in place does not establish the causal link between the removal restrictions and their impact on the upcoming proceeding." *Id*. The court also found that the timing of the TRO Motion particularly undermined the petitioner's irreparable harm argument because they had been on notice of the remedy sought and proceedings against them for "nearly" a year. *Id*.

As The NLRB notes, this case is "nearly identical" to *Ares Collective*. (Doc. 9 at 13). Here, Petitioner seeks to enjoin parallel administrative proceedings before the NLRB because it claims the NLRB's ALJs and board members are unconstitutionally insulated from executive removal. (Doc. 2 at 2). Yet, the Court need not address this argument because, like in *Ares Collective*, the NLRB proceedings here will not permanently deprive Petitioner of its right to have a jury decide whether monetary damages are warranted. *See Ares Collective*, 2024 WL 4581436, at *2. Namely, Petitioner can seek review of the NLRB's decision on any damages in the court of appeals. *See id*. So, it cannot demonstrate that any harm from these alleged unconstitutional proceedings is "irreparable" because the alleged harm can be redressed by the appellate court. *See Premier Nutrition, Inc.*, 475 F. Supp. 2d at 1007. In its Reply, Petitioner adds that forcing it to participate in an administrative proceeding where the NLRB seeks unconstitutional relief "clearly demonstrates irreparable harm in addition to the fact that the time, inconvenience, and cost of participating in such a proceeding cannot be undone." (Doc. 11 at 5). This argument fails as the Supreme Court has held that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974).

Furthermore, the timing of Petitioner's TRO request undermines the irreparability and imminency of its alleged harms. *See Caribbean Marine Servs. Co.*, 844 F.2d at 674 ("[A] plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief.") Like the petitioners in *Ares Collective*, Petitioner has been on notice of the nature of the remedy sought and the fact that the NLRB would hold a hearing since February 26, 2024. Yet Petitioner waited nine months—until October 21,

2024—to file its claim for relief in this Court. *See id.* (*See also* Doc. 1-1 at 3–4, 10 (the NLRB filed a Consolidated Complaint against Petitioner on February 26, 2024, and an administrative hearing was scheduled for October 29, 2024)). While Petitioner argues that it heard "nothing" between the February 2024 filing of the Consolidated Complaint and the October 15, 2024, contact, it does not show how this lack of contact requires an injunction. (Doc. 2 at 2). Conversely, this long delay before seeking the TRO implies a lack of urgency or irreparable harm. *See Wahoo Int'l, Inc.*, 2014 WL 2106482, at *3. Also, this delay cannot be fairly attributed to a lack of knowledge of the legal basis for relief because Petitioner affirmatively raised identical constitutional defenses and arguments in its March 11, 2024, Answer to Respondent's Consolidated Complaint. (Doc. 1-1 at 17–19). This delay, combined with Petitioner's knowledge of the proceedings against it, also preclude Petitioner's entitlement to a TRO. *Ares Collective*, 2024 WL 4581436, at *2.

In short, Petitioner cannot show that injunctive relief is warranted here because it has failed to demonstrate irreparable harm related to its constitutional claims. *See Winter*, 555 U.S. at 24; *Decker Coal*, 8 F.4th at 1137 ("The key . . . is demonstrating that the unconstitutional provision[s] actually caused the plaintiff harm.").

Accordingly,

**IT IS ORDERED** that Petitioner's Motion for Temporary Restraining Order followed by a Preliminary Injunction (Doc. 2) is **DENIED**.

Dated this 12th day of November, 2024.

Honorable Diane J. Humetewa
United States District Judge